ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| CARMEN IRENE FONT NICOLE Y OTROS<br><br>Recurrida<br><br>v.<br><br>RICARDO FIDENCIO SANCHEZ ORTIZ POR SÍ Y REP. DE LA SLG CON CARLA MÉNDEZ BUSO Y OTROS<br><br>Peticionaria | **TA2026CE00666** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.: BY2025CV04648<br><br>Sobre: Ley para la Reforma Del Proceso de Permiso (Ley Núm. 161-2009) |
|---|---|---|

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 10 de junio de 2026.

Comparecen ante nos el Dr. Ricardo Sánchez Ortiz (doctor Sánchez), la Dra. Carla Méndez Buso (doctora Méndez) y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en conjunto, "los peticionarios") y nos solicitan que revisemos una *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 25 de marzo de 2026. Mediante el referido dictamen, el foro primario ordenó la demolición de las obras de construcción descritas en la *Demanda*.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** expedir el auto de *certiorari*.

### I.

El 5 de septiembre de 2025, el Dr. William Townsend Picó (doctor Townsend), la Sra. Carmen I. Font Nicole (señora Font) y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en conjunto, "los recurridos")

presentaron una *Demanda Jurada de Injuction* en contra de los peticionarios.[1] En esencia, esbozaron que son los dueños y residentes de una propiedad en la Urb. Garden Hills en Guaynabo, la cual colinda con la de los peticionarios. No obstante, alegaron que los peticionarios iniciaron una construcción pegada a la pared de la colindancia posterior, sin dejar el espacio mínimo requerido de patio posterior. A su vez, señalaron que la estructura no poseía los correspondientes permisos de construcción, ni rótulos requeridos por ley. Manifestaron que, aun cuando le solicitaron personalmente y mediante una carta, copia de los permisos de construcción, nunca le fueron entregados. Por ello, solicitaron el *injuction* estatutario, así como la demolición de las partes construidas ilegalmente.

Luego de varias incidencias procesales, el 23 de septiembre de 2025, los peticionarios presentaron su *Contestación a la Demanda de Interdicto*.[2] Mediante esta negaron ciertas alegaciones y levantaron las correspondientes defensas afirmativas. Entre ellas, que habían iniciado los trámites de legalización y gestión de permiso ante la Oficina de Gerencia de Permisos (OGPe); que habían paralizado voluntariamente la obra; que el remedio de demolición era prematuro y desproporcionado, debido a que había un proceso administrativo de legalización; entre otras defensas.

El 30 de septiembre de 2025, el foro primario notificó una *Sentencia Final,* mediante la cual declaró *Ha Lugar* la *Demanda* y en consecuencia, ordenó la paralización inmediata de toda obra de construcción,

---

[1] *Demanda Jurada de Injuction*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Contestación a la Demanda de Interdicto*, entrada núm. 29 en SUMAC.

además de la demolición de estas.[3] Asimismo, indicó lo siguiente:

> Según indicado en corte abierta, una vez advenga final y firme esta sentencia, y la parte demandante solicite el desacato o la ejecución de la misma, este tribunal le concederá oportunidad a la parte demandada para que muestre causa del porqué no deba concederse dicho remedio. Este tribunal tendrá la discreción para determinar en dicho momento, tomando en consideración el estado procesal del procedimiento administrativo y las gestiones afirmativas de la parte demandada para la obtención del permiso, si procede la demolición de las obras o una extensión de término para que culmine dicho proceso administrativo.

Posteriormente, el 5 de noviembre de 2025, la parte recurrida presentó una *Moción Solicitando Ejecución de Sentencia*.[4] En esta, señalaron que la *Sentencia* era final, firme e inapelable, y los peticionarios a la fecha no poseían permiso alguno de construcción. Por ello, solicitaron la ejecución de la sentencia, disponiendo la paralización y demolición de las estructuras ilegales.

En desacuerdo, el 21 de noviembre de 2025, los peticionarios presentaron una *Moción Informativa e Cumplimiento de Orden, en Oposición a Moción de Ejecución de Sentencia*.[5] Alegaron que, la obra de construcción se encontraba paralizada. Asimismo, informaron que el primer paso del trámite ante la OGPe, sobre la fase ambiental, ya había sido completada, mediante la emisión de una *Determinación de Cumplimiento de Exclusión Categórica*. A su vez, reconocieron que aun cuando dicho documento no constituía el permiso de construcción, era requisito para radicar la *Consulta de Construcción*. Añadieron, que, a través del arquitecto

---

[3] *Sentencia Final*, entrada núm. 33 en SUMAC.
[4] *Moción Solicitando Ejecución de Sentencia*, entrada núm. 44 en SUMAC.
[5] *Moción Informativa e Cumplimiento de Orden, en Oposición a Moción de Ejecución de Sentencia*, entrada núm. 48 en SUMAC.

contratado, se encontraba en el proceso de radicar formalmente ante el Municipio de Guaynabo la *Solicitud de Consulta de Construcción*. Por ello, reiteró que el proceso de permisos toma tiempo, y ordenar la demolición de la estructura, pese a la gestiones diligentes que han realizado, privaría de efecto las disposiciones reglamentarias. Así pues, solicitó un término adicional de seis (6) meses para culminar el trámite.

Evaluadas las mociones presentadas, el 24 de noviembre de 2025, el foro primario notificó una *Orden*, en la cual determinó mantener en suspenso la solicitud de ejecución de sentencia, y ordenó a los peticionarios a informar el estatus de los permisos en un término de 30 días.[6]

El 23 de diciembre de 2025, los peticionarios presentaron una *Moción Informativa en Cumplimiento de Orden […]*.[7] En esta, indicaron que el trámite se encontraba bajo evaluación en la Oficina de Permisos del Municipio Autónomo de Guaynabo, quien había requerido información adicional para continuar el curso del procedimiento administrativo. Asimismo, esbozaron que entre los requerimientos se encontraba una recomendación por parte de LUMA, lo que pudiera atrasar la determinación final del trámite. Así pues, solicitaron se mantuviera en suspenso la solicitud de ejecución de sentencia.

El 29 de diciembre de 2025, el foro primario notificó una *Orden*, en la cual dio por cumplida la orden.[8]

---

[6] *Orden*, entrada núm. 50 en SUMAC.
[7] *Moción Informativa en Cumplimiento de Orden […]*, entrada núm. 51 en SUMAC.
[8] *Orden*, entrada núm. 55 en SUMAC.

El 9 de enero de 2026, los recurridos presentaron una *Moción Reiterando Solicitud de Ejecución de Sentencia*.[9] Insistieron en que, los peticionarios no contaban con un permiso de construcción que autorizara o convalidara la obra realizada ilegalmente. Resaltaron que, los únicos trámites administrativos realizados consistían en la *Determinación de Cumplimiento de Exclusión Categórica* y una *Consulta de Construcción,* y ninguno constituía un permiso de construcción ni suponía una autorización final emitida por agencia gubernamental competente. A su vez, arguyen que los peticionarios intentan legalizar una obra de construcción, que por su naturaleza, localización y violaciones sustantivas, es incompatible con la ley y con el propósito expreso del remedio interdictal estatutario de proveer una respuesta sumaria y eficaz. Por consiguiente, solicitaron la ejecución de la sentencia final.

Por su parte, el 27 de enero de 2026, los peticionarios presentaron una *Moción en Cumplimiento de Orden, Informativa Urgente y en Oposición a la Moción Reiterando Solicitud de Ejecución de Sentencia Informativa Sobre Gestiones Colaterales de la Parte Demandante ante el Foro Administrativo del Municipio Autónomo de Guaynabo y Solicitud de Remedios por Conducta de Mala Fe y en Solicitud de Apercibimiento de Sanciones a la Parte Demandante*.[10] En esta, alegaron que los recurridos habían presentado una solicitud de

---

[9] *Moción Reiterando Solicitud de Ejecución de Sentencia*, entrada núm. 56 en SUMAC.
[10] *Moción en Cumplimiento de Orden, Informativa Urgente y en Oposición a la Moción Reiterando Solicitud de Ejecución de Sentencia Informativa Sobre Gestiones Colaterales de la Parte Demandante ante el Foro Administrativo del Municipio Autónomo de Guaynabo y Solicitud de Remedios por Conducta de Mala Fe y en Solicitud de Apercibimiento de Sanciones a la Parte Demandante*, entrada núm. 61 en SUMAC.

intervención ante el procedimiento administrativo, con la intención de convertir un trámite técnico de permisos en un pleito paralelo.

El 29 de enero de 2026, el foro primario notificó una *Orden*,[11] mediante la cual expuso lo siguiente:

> Evaluadas las posiciones de ambas partes, este tribunal determina continuar manteniendo en suspenso la ejecución de la sentencia para darle deferencia a la evaluación del foro administrativo. Corresponde a amabas partes exponer sus posturas en dicho procedimiento sin intervención alguna de este tribunal. Informe parte demandada en 45 días el estado del procedimiento administrativo ante el Municipio.

El 12 de marzo de 2026, los recurridos presentaron una *Moción Informando Archivo el Procedimiento Administrativo y Solicitando Ejecución de Sentencia*.[12] En síntesis, sostuvieron que luego de haber solicitado la intervención en el procedimiento administrativo ante el Municipio de Guaynabo, y haber sido declarada *Ha Lugar*; presentaron su oposición a la continuación del trámite administrativo y una solicitud de revocación de consulta de construcción. Sobre esta, expusieron que los peticionarios no presentaron ningún escrito, por consiguiente, el trámite había sido "Archivado", ante el incumplimiento con requisitos procesales y documentales. Por lo tanto, solicitaron una vez mas que el foro primario impartiera su autoridad y ejecutara la *Sentencia* del caso.

El 13 de marzo de 2026, los peticionarios presentaron su oposición a la moción instada por los recurridos.[13] En esta, informaron que era incorrecta la

---

[11] *Orden*, entrada núm. 63 en SUMAC.
[12] *Moción Informando Archivo el Procedimiento Administrativo y Solicitando Ejecución de Sentencia*, entrada núm. 65 en SUMAC.
[13] *Urgente Oposición a Moción Informando Archivo del Procedimiento Administrativo […]*, entrada núm. 66 en SUMAC.

insinuación de los recurridos de no existir la posibilidad de continuar el trámite o que el archivo del sistema equivalga a una terminación definitiva del procedimiento administrativo. Asimismo, arguyeron que habían estado en constante comunicación con la Oficina de Permisos del Municipio, así como de las oficinas de LUMA. Sobre el archivo en el sistema, fue automáticamente, por no haberse completado aún el endoso de LUMA, pero que el trámite continuaba siendo susceptible de reabrirse una vez se completara ese único requisito pendiente. Por ello, reiteraron que habían estado realizando gestiones diligentes para legalizar la obra de construcción.

Evaluadas las mociones de las partes, el 25 de marzo de 2026, el foro primario notificó una *Resolución Interlocutoria*,[14] mediante la cual concluyó lo siguiente:

> Evaluadas las posiciones de las partes, tomando en consideración que se le ha concedido a la parte demandada más de seis meses para legalizar la obra y que no ha rebatido el hecho de que el proceso administrativo ante el Municipio de Guaynabo está archivado, procede la ejecución de la sentencia. En consecuencia, se ordena la demolición de las obras de construcción descritas en la Demanda.

En desacuerdo, el 8 de abril de 2026, los peticionarios presentaron una *Moción Urgente de Reconsideración*.[15] En esencia, sostuvieron que la Oficina de Permisos del Municipio de Guaynabo había reabierto el caso y se encontraba bajo evaluación una enmienda al permiso de construcción.

Mientras que, el 23 de abril de 2026, los recurridos presentaron su oposición a la reconsideración, en la

---

[14] *Resolución Interlocutoria*, entrada núm. 77 en SUMAC.
[15] *Moción Urgente de Reconsideración*, entrada núm. 79 en SUMAC.

cual alegaron que los peticionarios pretendían utilizar de forma abusiva los remedios administrativos para dilatar indefinidamente el cumplimiento del dictamen del foro recurrido.

El 24 de abril de 2026, mediante *Resolución Interlocutoria*, el foro primario declaró *No Ha Lugar* la moción de reconsideración instada por los peticionarios.

Aun inconformes, el 25 de mayo de 2026, los peticionarios presentaron el recurso de epígrafe, en el cual plantearon los siguientes señalamientos de error:

> PRIMER ERROR: Erró el Tribunal de Primera Instancia al ordenar la ejecución y demolición de las obras sin permitir que culminara el trámite administrativo de legalización iniciado por la parte apelante ante OGPe y el Municipio Autónomo de Guaynabo, en contravención de la Sentencia de 25 de septiembre de 2025, la Sección 2.7.4.2 del Reglamento Conjunto de 2023 y la política pública aplicable.

> SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al castigar al apelante con el remedio de demolición por demoras administrativas inherentes, previsibles y atribuibles al propio sistema regulatorio del Estado, así como por actos deliberados de entorpecimiento de la parte apelada.

> TERCER ERROR: Erró el Tribunal de Primera Instancia al desconocer la confianza legítima generada por su propia Sentencia de 25 de septiembre de 2025, la cual inducía razonablemente a entender que las gestiones afirmativas de legalización serían evaluadas al momento de considerar la ejecución.

> CUARTO ERROR: Erró el Tribunal de Primera Instancia al obviar la doctrina de jurisdicción primaria y la política pública de legalización, pese a existir un trámite administrativo activo y técnicamente viable ante el foro especializado.

> QUINTO ERROR: Erró el Tribunal de Primera Instancia al ordenar la demolición a pesar de la reapertura por el Municipio Autónomo de Guaynabo del expediente administrativo de permisos, hecho que evidenciaba la continuidad y viabilidad del proceso de legalización promovido por la parte apelante.

SEXTO ERROR: Erró el Tribunal de Primera Instancia al conceder el remedio de demolición sin considerar adecuadamente los planteamientos sobre la conducta de la parte apelada ante el trámite administrativo y sobre las estructuras señaladas en su propia propiedad.

El 26 de mayo de 2026, emitimos una *Resolución* mediante la cual le concedimos a la parte recurrida el término de quince (15) días para expresarse sobre los méritos del recurso.

El 9 de junio de 2026, la parte recurrida presentó su *Memorando en Oposicion a la Expedición del Auto de Certiorari.*

Así pues, contando con la comparecencia de todas las partes procedemos a atender el recurso de epígrafe.

## II.

En el caso *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023), el Tribunal Supremo de Puerto Rico estableció los criterios para la expedición de un *certiorari*. En este, expuso que el *certiorari* es mecanismo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Íd.* Véase, además: *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *McNeill Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2012); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). La característica principal del *certiorari* es la discreción que tiene el tribunal para atenderlo. La discreción ha sido definida reiteradamente como una forma de razonabilidad aplicada al discernimiento judicial. Su ejercicio persigue el objetivo de llegar a una conclusión justiciera. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210.

Por encontrarnos ante un trámite post-sentencia el Tribunal de Apelaciones ejerce su discreción conforme la Regla 40 Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas., Reglamento TA*, 2025 TSPR 42, la cual establece los criterios que debería considerar para determinar si procede la expedición de un auto de *certiorari*. Por ello, la regla citada dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### III.

En el caso de autos, los peticionarios plantearon seis (6) señalamientos de error alegadamente cometidos por el foro primario. En esencia, alegaron que abusó de su discreción el foro *a quo* al ordenar la demolición prematura de la obra de construcción, ignorar la reapertura del cauce administrativo e imponerles un castigo por demoras administrativas ajenas a su control.

No obstante, al examinar detenidamente las actuaciones del foro de instancia, concluimos que no surge que haya actuado de forma arbitraria, caprichosa, que haya abusado al ejercer su discreción o cometido algún error de derecho. Por el contrario, honró rigurosamente la salvaguarda judicial dispuesta en su *Sentencia*, absteniéndose de ejecutar la demolición de inmediato y concediéndoles tiempo sustancial para que acreditaran la obtención del permiso de construcción.

La determinación de ejecutar la determinación recurrida, se produjo únicamente cuando constó en el expediente que el trámite ante el Municipio de Guaynabo había sido archivado. El hecho de que los peticionarios hayan logrado posteriormente una reapertura técnica del expediente municipal, no altera la realidad jurídica que, a la fecha de la orden, la estructura continúa siendo ilegal.

Por lo tanto, concluimos que de los autos no se desprende indicador alguno que requiera nuestra intervención con la determinación recurrida y tampoco encontramos fundamento legal alguno que amerite la expedición del auto de *certiorari* al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto discrecional solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones